**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **APRIL LEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:19 -CV-00742 -MAB** |
| | ) | |
| **SECRETARY OF STATE OF ILLINOIS, ET AL,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court is Defendants Randy Blue, Michael Mayer, Jay Morgan, and the Office of the Illinois Secretary of State's motion to dismiss (Doc. 18). For the reasons set forth below, the motion to dismiss will be granted.

## Factual and Procedural Background

Plaintiff filed her complaint on July 9, 2019 pursuant to 42 U.S.C. § 1983 for issues related to her employment with and termination from the Office of the Illinois Secretary of State ("SOS") (Doc. 1). Plaintiff was employed by the SOS from March 2000 to 2018 (Doc. 1, p. 1).[1] The SOS is a government entity that operates a driver's license facility in Belleville, Illinois (Doc. 1, p. 2). The SOS was the employer for some of the Defendants listed in this case as well, including Michael J. Mayer, Jay Morgan, and Randy Blue

[1] In analyzing a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded facts as true, draws all possible inferences in plaintiff's favor, and construes the complaint in the light most favorable to the plaintiff. *E.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation omitted)

(collectively known as the "individual Defendants")(Doc. 1, p. 1). Plaintiff alleges that the individual Defendants acted in a malicious, willful, and/or wanton manner towards her and were involved in conspiring to wrongfully terminate her employment (Doc. 1, p. 2). Plaintiff brings her suit against the State of Illinois as it is the entity that operates the SOS and the individual Defendants, listed previously, as they acted under color of state law and within the scope of their employment (*Id.*).

Plaintiff was terminated from employment with the SOS in 2018, although the circumstances surrounding her termination are not clear from the complaint. Plaintiff alleges that at some point, the individual Defendants reached an agreement to frame her for an activity that could, presumably, lead to her firing (Doc. 1, p. 4). After this incident, which Plaintiff does not detail, the Merit Commission conducted a hearing before firing Plaintiff (Doc. 1, p. 3). Plaintiff alleges that the hearing was not fair, as Defendants withheld exculpatory evidence, engaged in subornation of perjury, and coerced witnesses to produce false evidence against Plaintiff (Doc. 1, p. 3). The misconduct Defendants engaged in, according to Plaintiff, was objectively unreasonable and undertaken with intentional and willful indifference to Plaintiff's constitutional rights (Doc. 1, p. 3). What this conduct was, exactly, is unclear as Plaintiff's complaint is devoid of details. Plaintiff alleges that Defendants "joked about hitting her and conspired to cover it up by lying and publicly stating that she fell on a wet floor" (Doc. 1, p. 4). At some point, Defendants Blue and Mayer taunted Plaintiff and threatened her with violence (Doc. 1, p. 4). Defendants' behavior and the entire hearing process caused Plaintiff to suffer emotional distress (Doc. 1, p. 3). In addition, Plaintiff describes that

Defendants stood by without intervening to prevent the alleged misconduct by the other Defendants (Doc. 1, p. 4).

Plaintiff brings a total of six claims against Defendants resulting from the aforementioned facts. Plaintiff alleges due process, failure to intervene, and conspiracy claims under 42 U.S.C. §1983 and intentional infliction of emotional distress, conspiracy, and indemnification claims under Illinois law (Doc. 19, pp. 1-2).

On December 23, 2019, Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) as well as a supporting memorandum (Docs 18, 19). Plaintiff filed her response on April 23, 2020, where she attempted to include more details of the timeline of events leading up to and after her firing, but none of these details can be found within the complaint (*See generally* Doc. 30). It is worth noting that a party opposing a Rule 12(b)(6) motion may allege additional facts (without evidentiary support) or elaborate on the existing factual allegations, so long as the additions and/or elaborations are consistent with the pleadings. *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 78 (7th Cir. 1992). But here, given the paucity of actual detail in Plaintiff's complaint, the Court cannot fairly say these new facts are consistent with or elaborate on the existing facts because there are almost none in the existing complaint.[2] Accordingly, the Court will not consider these new facts advanced in the opposition brief when considering the sufficiency of the complaint.

---

[2] Of course, these facts may be helpful for Plaintiff in attempting to reassert the claims that are dismissed without prejudice.

Defendants filed a motion for leave to file supplemental authority on April 24, 2020, which Plaintiff did not oppose (*see* Docs. 31, 32). In their motion for leave, Defendants argue that a recent Seventh Circuit case, *Vargas v. Cook Cnty Sheriff's Merit Bd.,* is applicable to the present matter as it affirms a motion to dismiss a plaintiff's due process claims brought pursuant to 42 U.S.C. §1983 in a similar employment termination case (Doc. 31). *See Vargas v. Cook Cnty Sheriff's Merit Bd.,* 952 F.3d 871 (7th Cir. Mar. 11, 2020).

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the plaintiff's favor. *E.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation omitted). The complaint will survive the motion to dismiss only if it alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff does not need "detailed factual allegations," but must plead more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.

Determining whether a complaint plausibly states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The structure outlined here for the complaint will ensure that the defendant receives "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 1959.

**Discussion**

Defendants make a series of seven arguments in the motion to dismiss, arguing that Plaintiff has failed to plead sufficient facts for the case to survive beyond this early stage of litigation (Doc. 19). Plaintiff opposes each of these arguments in her response to Defendants' motion to dismiss (Doc. 30).

I. The Secretary of State Merit Commission's Finding

First, in their motion to dismiss, Defendants ask the Court to consider two attachments to their motion that relate to the Plaintiff's SOS Merit Commission hearing, which Defendants argue Plaintiff referenced in her complaint (Doc. 19, pp. 4-5). These two documents are the Hearing Officer's Proposal and the Finding and Decision of the Commission, attached as Exhibits 1 and 2 to Defendants' motion to dismiss (Docs. 19-1, 19-2). Defendants argue that the Court should take judicial notice of the SOS Merit Commission's finding under Federal Rule of Evidence 201 and the Incorporation-By-Reference Doctrine, which is a doctrine that "prevents a plaintiff from evading a dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit" (Doc. 19, pp. 3-4)(citing *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012)). Plaintiff argues that the Court should not take judicial

notice of these documents as the entire hearing process was tainted, with Defendants withholding evidence and coercing witnesses to produce false evidence, for example. Accordingly, the documents do not meet the second prong of FED. R. EVID. 201(b), which requires the fact to be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (Doc. 30, p. 3). These documents, according to Plaintiff, should not be considered at the motion to dismiss stage of litigation.

A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. See FED.R.CIV.P. 10(c) (written instrument that is exhibit to pleading is part of pleading for all purposes); *Geinosky,* 675 F.3d at 745 n.1; *Papasan v. Allain,* 478 U.S. 265, 268 (1986) (judicial notice of public records); *188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 735 (7th Cir.2002) (documents referred to in complaint and central to claim); *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994) (same). If a moving party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56. *See* FED.R.CIV.P. 12(d). Alternatively, if the Court decides to exclude the documents, then the motion will continue under Rule 12.

The incorporation-by-reference doctrine is meant to keep plaintiffs from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [their] complaint a document that prove[s] that [their] claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Despite courts' "relatively liberal" approach to the exception, it remains a "narrow" one. *See Hecker*, 556 F.3d at 582 (7th Cir. 2009). *See also 188 LLC,* 300

F.3d at 735 (7th Cir. 2002). It is aimed "at cases interpreting…a contract," and is broad enough to include documents incorporated into the contract by reference. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). *See also 188 LLC*, 300 F.3d at 735 (incorporating by reference a form that defendant alleged the parties' agreement incorporated by reference). The documents must be "concededly authentic" and must not require "discovery to authenticate or disambiguate." *Tierney*, 304 F.3d at 738–39; *Levenstein*, 164 F.3d at 347 (the district court was within its discretion when, "noting that [plaintiff] wanted further discovery," it "chose to handle the case as a straightforward motion to dismiss, rather than converting it to a motion under Rule 56").

As an initial matter, Plaintiff's complaint is sparse on detail. And while the Court understands Defendants' position that the materials they attached to their motion to dismiss are helpful in outlining the chronology of events leading up to Plaintiff's termination, as well as defining the parties' relationships and identifying relevant parties (all lacking from Plaintiff's current complaint), these materials do not fit into the narrow exception outlined previously. Here, the documents do not help the Court interpret a contract, for example, or prove on the face of the documents that Plaintiff's claims have no merit. It does not appear that Plaintiff is attempting to evade dismissal by not including the SOS Merit Commission's documents. Logically, Plaintiff is aware that these documents will appear in the record at some point during the course of this litigation. In fact, Plaintiff counts on that happening, highlighting that these documents outline what Plaintiff contends was a "tainted" hearing, from the method and manner in which it was investigated to how it was conducted. To accept these documents into the record at this

point, the Court would be expanding the narrow judicial notice exception and it would only be fair to then allow Plaintiff to present her evidence of how the hearing was tainted (*e.g.*, requiring the parties to produce the several emails between Defendants Blue and Mayer, along with other administration staff, where Defendants allegedly agreed to conspire against Plaintiff, which appear to be missing from Defendants' attachments), which is not necessary or appropriate at this early stage of litigation. Accordingly, the Court will not take judicial notice of Defendants' exhibits attached to their motion to dismiss (Doc. 19-1, 19-2).

II. State immunity under the Eleventh Amendment

Defendants argue that Plaintiff cannot bring claims against the State of Illinois and the Office of the Secretary of State as they are entitled to immunity under the Eleventh Amendment of the United States Constitution (Doc. 19, p. 5). Plaintiff seems to agree that those parties are entitled to immunity, but argues that she may still bring claims against the individual Defendants (Doc. 30, p. 4).

The Eleventh Amendment serves as a bar to certain federal court actions "against a state, state agencies, or state officials acting in their official capacities." *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010). While exceptions do exist, suits under §1983 are not one of those recognized exceptions. *Thomas v. Illinois,* 697 F.3d 612, 613 (7th Cir. 2012) ("[A] state and its agencies are not suable 'persons' within the meaning of section 1983.").

Plaintiff's claims are barred against the State of Illinois and the Office of the Secretary of State because "a state and its agencies are not suable 'persons' within the

meaning of section 1983." *Thomas*, 697 F.3d at 613. It is unclear from Plaintiff's complaint if she is officially bringing claims against the State of Illinois in addition to the SOS, as Defendants argue, because while Plaintiff did not include the State of Illinois as a Defendant in the caption, she does later claim that "[t]he State of Illinois is also sued because it is the entity that operates the [SOS]" (Doc. 1, p. 2; Doc. 19, p. 5). To the extent that Plaintiff is, in fact, suing the State of Illinois and the SOS, her claims are barred against those entities and will be dismissed with prejudice.

III. Plaintiff's due process claim under 42 U.S.C. §1983

Defendants argue in their motion to dismiss that Plaintiff has not adequately alleged pre- or post-deprivation procedures and, therefore, cannot maintain her due process claim under §1983 (Doc. 19, pp.6-8). Plaintiff argues she has alleged that the pre- and post-deprivation procedures were biased and inherently meaningless, which sustains her due process claim for purposes of a 12(b)(6) motion (Doc. 30, pp. 6-10).

Public employees have a property interest in continued employment and may not be deprived of that interest without notice and an opportunity to be heard. *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 538-41 (1985); *Carmody v. Bd. Of Trs. Of Univ. of Ill.*, 747 F.3d 470, 476 (7th Cir. 2014). In general, "the right to some kind of prior hearing is paramount." *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). The type of process due depends on the nature of the private interest at stake, the risk of decisional error, and the government's interest. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Generally, when a

state official deprives a person of her property through a random, unauthorized act[3] that departs from state law, the federal due-process guarantee requires only that the state provide an adequate post-deprivation remedy. *Simmons v. Gillespie,* 712 F.3d 1041, 1044 (7th Cir. 2013). The Seventh Circuit has described various situations where state actors have departed from state law and yet, there is no federal violation because there are sufficient post-deprivation remedies. In other words, "random, unauthorized acts are, after all, inherently unpredictable, so a plaintiff can prevail on a due-process claim…only if state law fails to provide an adequate post deprivation remedy." *Vargas,* 952 F.3d at 871, citing *Simmons,* 712 F.3d at 1044; *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008). The Seventh Circuit has also held that the Illinois Administrative Review Act provides constitutionally adequate post-deprivation remedies for public employees to challenge these sorts of disciplinary decisions where public employees depart from state law. *Vargas,* 952 F.3d at 875, citing *Cannici v. Village of Melrose Park*, 885 F.3d 476, 480 (7th Cir. 2018).

Both parties agree that Plaintiff has a property interest in her job, so the dispute is over whether she sufficiently pled she was deprived of her property interest without due process of law. Defendants highlight that Plaintiff has not asserted facts to demonstrate she availed herself of the immediate post-deprivation procedure, which Defendants argue is to seek state judicial review pursuant to the Illinois Administrative Review Law

---

[3] The Seventh Circuit analyzed what constitutes a "random, unauthorized act" in employment cases such as the present matter in the *Vargas* decision. *See Vargas.,*952 F.3d at 875 (7th Cir. 2020). There, the Seventh Circuit outlined that biased Merit Board decisions constitute these sorts of "random, unauthorized" acts that depart "from state law." *Id.*

735 ILCS 5/3-101 *et seq.* (Doc. 19, p. 7).

Plaintiff argues that she has, in fact, alleged inadequate pre- and post-deprivation procedures. But conspicuously lacking from all of Plaintiff's arguments is any citation back to or reference to a single paragraph in the actual complaint. In short, Plaintiff's argument is predicated on a host of facts, none of which can be fairly found in the complaint. By way of example, Plaintiff contends that both she and the SOS merit commission have documents that show Defendants decided to discharge her well before the pre-deprivation interview, going back to 2017, so her opportunity to be heard was, essentially, meaningless as her termination was predetermined (Doc. 30, p. 8).

In analyzing the sufficiency of the complaint, the Court believes Defendants' arguments are well-taken and that Plaintiff's complaint is lacking details necessary to put Defendants on notice of Plaintiff's claims, including the heart of Plaintiff's due process claim. The lack of detail here is especially critical given that many of Plaintiff's other claims depend on this due process claim. In examining the complaint, Plaintiff has offered little more than conclusory allegations and legal conclusions. And ultimately, the complaint is simply lacking any meaningful facts that would allow the Court to even draw an inference in the Plaintiff's favor. Accordingly, Plaintiff has failed to sufficiently allege a due process claim and the Defendants' motion to dismiss will be granted and the claim will be dismissed without prejudice.[4] The Court notes Defendants' supplemental

---

[4] Fed. R. Civ. P. 15(a)(2) conveys a liberal approach to amendments, stating that courts "should freely give leave when justice so requires." *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 351 (7th Cir.1992). The rule "reflects a policy that cases should generally be decided on the merits and not on the basis of technicalities." *McCarthy v. Painewebber, Inc.*, 127 F.R.D. 130, 132 (N.D.Ill.1989); *see Diersen v. Chi. Car*

authority (*Vargas v. Cook Cnty Sheriff's Merit Bd.*, 952 F.3d 871 (7th Cir. Mar. 11, 2020), but nevertheless believes it prudent to allow Plaintiff an opportunity to try to amend and assert a claim consistent with Seventh Circuit precedent.

IV. Plaintiff's failure to intervene and conspiracy claims

Defendants argue that because Plaintiff has failed to sufficiently allege her underlying due process claim, both her failure to intervene and conspiracy claims also fail because they are dependent on pleading a constitutional violation (Doc. 19, pp. 8-9). Plaintiff disagrees, arguing she has appropriately alleged the elements of these two claims, including a constitutional violation (Doc. 30, pp. 10-12).

To plead a failure to intervene claim, a plaintiff must demonstrate that the defendants (1) knew that a constitutional violation was committed, and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee,* 850 F.3d 335, 342 (7th Cir. 2017). To prevail on a conspiracy claim, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Daugherty v. Page,* 906 F.3d 606, 612 (7th Cir. 2018), citing *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, the plaintiff must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018). "Because conspiracies are often carried out clandestinely and direct evidence

---

*Exch.,* 110 F.3d 481, 489 (7th Cir.1997); *Woods v. Ind. Univ.-Purdue Univ. at Indianapolis,* 996 F.2d 880, 884 (7th Cir.1993). Accordingly, Plaintiff will be granted leave to amend to clarify how Plaintiff contends the pre- and post-deprivation procedures were inadequate and biased.

is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511

Here, the Court has concluded that Plaintiff has failed to allege sufficient detail to state a due process claim. Although Plaintiff will be given leave to amend, the operative complaint, as stated, fails to adequately allege a due process claim under 42 U.S.C. § 1983. The Court agrees with the arguments outlined by Defendants in their memorandum in support of dismissal. The Plaintiff must adequately demonstrate an underlying constitutional violation in order to maintain a failure to intervene or conspiracy claim. Accordingly, Plaintiff's claims for failure to intervene (count 2) and conspiracy (count 3) will be dismissed without prejudice. Plaintiff will be given leave to amend. *See supra*, n.4.

V. Plaintiff's claim for intentional infliction of emotional distress

Defendants argue, simply, that Plaintiff has failed to allege an intentional infliction of emotional distress claim. At most, Defendants argue, she has alleged two of the individual Defendants committed intentional infliction of emotional distress through "taunting" and "threats of violence," but since she does not allege she was coerced or threatened into engaging in any sort of activity, she fails to state a claim (Doc. 19, p. 11). Plaintiff argues that she has sufficiently pled that Defendants engaged in behaviors that rose to the level of outrageous conduct (Doc. 30, p. 14).

To state a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that "(1) [Defendants'] conduct was extreme and outrageous; (2) [Defendants] either intended to inflict severe emotional distress or knew that there was at least a high probability that [they] would inflict severe emotional distress; and (3) the

conduct did cause severe emotional distress." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010)(citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Illinois courts have required a "heightened level of egregiousness" and conduct that has been "outrageous" and "extreme" to maintain an IIED claim. "IIED requires more than 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v.Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (citation and internal quotation marks omitted).

Under Illinois law, a defendant's conduct must be such that the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!" *Honnaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citations omitted). In *McGrath*, for example, the Supreme Court of Illinois cited non-exclusive factors which can help inform this fluid standard. *McGrath*, 533 N.E.2d at 809–810. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id.*

Here again, Plaintiff's complaint is simply lacking the sufficient details to adequately state a claim for intentional infliction of emotional distress. In the broad spectrum of things, Plaintiff's complaint is little more than a formulaic recitation of the elements (*See* Doc. 1 ¶¶ 27-30). While detailed factual allegations are certainly not required, the plaintiff must plead more than "labels and conclusions" and must provide more facts in order to give faire notice of the grounds upon which this claim rests. *Twombly*, 550 U.S. at 555. As such, Plaintiff's intentional infliction of emotional distress

claim is dismissed without prejudice. Plaintiff will be granted leave to amend her complaint.

VI. Plaintiff's Illinois conspiracy claim as to the individual Defendants

Defendants argue that to sustain a claim of conspiracy, a plaintiff must allege that "one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort" (Doc. 19, p. 12, citing *Adocock v. Brakegate, Ltd.,* 162 Ill. 2d 54, 63 (1994)). Defendants further argue that Plaintiff cannot sustain her conspiracy claim since she has not alleged that Defendants engaged in an underlying tort, as Illinois provides there is no tort of perjury or suborning perjury (*Id.*). Furthermore, Defendants argue that they are shielded from liability by the Illinois doctrine of absolute privilege (*Id.*). Plaintiff argues that the individual Defendants are not protected by absolute immunity as they are not the types individuals protected by this affirmative defense, such as regional legislators, prosecutors, public officials testifying in criminal trials, and witnesses before grand juries (Doc. 30, p. 14-15). Additionally, Plaintiff argues she sufficiently pled that Defendants engaged in willful and wanton conduct, which is an exception to the immunity provided in the Tort Immunity Act (Doc. 30, p. 15).

According to the Illinois Supreme Court, the elements of civil conspiracy under Illinois law are (1) a combination of two or more persons, (2) for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means in a concerted action, and (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston,* 807 N.E.2d 461, 470 (Ill.2004).

The key for the present matter is whether Plaintiff has alleged a tortious or

unlawful act. Defendants argue she has not because there is no tort of perjury or suborning perjury under Illinois law and Defendants are shielded from liability by the Illinois doctrine of absolute privilege, which Defendants imply applies to all witnesses (Doc. 19, p. 12).

Even with the bare pleadings, it does not seem that Defendants would enjoy absolute privilege. Witnesses have absolute privilege from civil suit for statements made during judicial proceedings. *Jurgensen v. Haslinger,* 692 N.E.2d 347 (Ill. 1998); *Renzi v. Morrison,* 618 N.E.2d 794 (Ill. 1993); *Libco Corp. v. Adams,* 426 N.E.2d 1130 (Ill. 1981). The purpose of this doctrine of absolute immunity is to protect a defendant "acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of the uncompensated harm to an injured party." *McNall v. Frus,* 336 Ill. App. 3d 904, 906 (3d Dist. 2002), citing *Thomas v. Petrulis,* 465 N.E.2d 1059, 1061 (Ill. 1984). At this point in the proceedings, when Plaintiff has alleged that Defendants conspired not to further an interest of social importance, but to get her fired, it is doubtful that the doctrine of absolute privilege applies.

As for Plaintiff's conspiracy claim as a whole, there are simply not enough facts pleaded to state a claim for conspiracy. Again here, all that Plaintiff does is reincorporate her already sparse complaint and then recite legal conclusions designed to hit the elements of civil conspiracy (*See* Doc. 1, ¶¶ 31-35). Accordingly, Plaintiff's conspiracy claim is dismissed without prejudice.

VII. Plaintiff's indemnification claim

Finally, Defendants argue that Plaintiff's indemnification claim fails because sovereign immunity applies and Plaintiff has failed to appropriately plead a cause of action (Doc. 19, p. 13-14). Plaintiff argues that if Plaintiff's actions are successful against the individual Defendants, state law triggers the state of Illinois to indemnify them (Doc. 30, p. 18).[5]

"Indemnity is a common law doctrine which shifts the entire responsibility from the party who has been compelled to pay the plaintiff's loss to another who actually was at fault." *Kerschner v. Weiss & Co.*, 667 N.E.2d 1351, 1355 (Ill. App. Ct. 1996). "The right to indemnity may be express, as in a contractual provision . . . ." *Id.* Or it may be implied in law in "quasi-contractual" situations "where the indemnitee, although without fault in fact, has been subjected to liability solely because of the legal relationship with the plaintiff or a nondelegable duty arising out of common or statutory law." *Id.*; *Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1251 (Ill. 1988) (citations omitted).

Under the State Employee Indemnification Act, 5 ILCS 350/1, *et seq.*, the State is obligated to indemnify "any State employee" in civil actions against the employee for "act[s] or omission[s] occurring within the scope of the employee's State employment" and the Attorney General is to appear on the employee's behalf. 5 ILCS 350/2(a) and (e)(ii). The Illinois State Employee Indemnification Act does not expressly create a private cause of action, so the Court must analyze if Plaintiff meets the criteria

[5] This begs the question of why Plaintiff would even be advancing a claim for indemnification in this case if it was automatically triggered if Plaintiff succeeds.

for an implied cause of action. *See* 5 ILCS 350/2; *see also Emerald Pork, II, Ltd. v. Purina Mills, Inc.*, 17 F.Supp.2d 816, 817 (C.D. Ill. Sept. 23, 1998) ("A private cause of action will be implied in Illinois only if: (1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act.").

As a general matter, the complaint fails to allege which defendants its claim for indemnification is aimed at (this is a consistent theme throughout the complaint). But to the extent it is alleged against the State of Illinois or the SOS, as Defendants argue, the Eleventh Amendment bars federal courts from exercising jurisdiction over "actions against a state brought by her own citizens," unless the state consents to suit. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992) (citations omitted). The fact that a state chooses to indemnify its employees for damages does not constitute consent. *Ollison v. Wexford Health Sources, Inc.*, No. 16-C-00662, 2016 WL 6962841, *8 (N.D. Ill. Nov. 26, 2016) (citation omitted).

Turning to the question of whether an implied cause of action can be maintained, both parties seem to agree the Illinois State Employee Indemnification Act does not expressly create a private cause of action. So the question becomes whether Plaintiff meets the criteria for an implied cause of action (*See* Doc. 19, p. 13 and Doc. 30, p. 17) (each party outlining the elements to establish private cause of action). In support of her claim for indemnification, Plaintiff provides one legal conclusion (Doc. 1, ¶ 37) and one fact – that Defendants were State employees and that they acted within the course and

scope of their employment (Doc. 1, ¶ 38). This is deficient. There are no facts that bear on any of the elements necessary to state a claim for an implied cause of action and the Court does not believe Plaintiff can do so against either the State of Illinois or the SOS for the reasons outlined above. It would be perplexing to the Court to attempt to advance an indemnification claim against an individual defendant. Accordingly, Plaintiff's claim for indemnification will be dismissed.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED**. To the extent Plaintiff is seeking to assert claims against the Secretary of State of Illinois and the State of Illinois, those claims are **DISMISSED with prejudice**. All of Plaintiff's other claims are **DISMISSED without prejudice**. Plaintiff will be given an opportunity to amend her complaint. Plaintiff's amended complaint is due on or before **October 6, 2020**.

**IT IS SO ORDERED.**

**DATED: September 16, 2020**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**