**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **APRIL LEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:19 -CV-00742 -MAB** |
| ) | |
| **SECRETARY OF STATE OF ILLINOIS,** ) | |
| **ET AL,** ) | |
| ) | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

Plaintiff April Len brings this suit pursuant to 28 U.S.C. § 1983 for adverse employment actions beginning in March 2017 when she was employed by the State of Illinois Secretary of State ("SOS") until June 2018 when she was fired (Doc. 43). Presently before the Court is Defendants Randy Blue, Michael Mayer, and Jay Morgan's second motion, and supporting memorandum, to dismiss (Docs. 44, 45). For the reasons set forth below, the motion to dismiss will be granted.

### <u>Factual and Procedural Background</u>

Plaintiff filed her complaint on July 9, 2019 pursuant to 42 U.S.C. § 1983 for issues related to her employment with and termination from the Office of the Illinois Secretary of State ("SOS") (Doc. 1). On December 23, 2019, Defendants filed a motion, and supporting memorandum, to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docs 18, 19). Plaintiff filed her response on April 23, 2020,

where she attempted to include more details of the timeline of events leading up to and after her firing, but none of these details can be found within the complaint (*See generally* Doc. 30). Defendants filed a motion for leave to file supplemental authority on April 24, 2020, which Plaintiff did not oppose (*see* Docs. 31, 32). In their motion for leave, Defendants argued that a recent Seventh Circuit case, *Vargas v. Cook Cnty Sheriff's Merit Bd.,* is applicable to the present matter as it affirms a motion to dismiss a plaintiff's due process claims brought pursuant to 42 U.S.C. §1983 in a similar employment termination case (Doc. 31). *See Vargas v. Cook Cnty Sheriff's Merit Bd.,* 952 F.3d 871 (7th Cir. Mar. 11, 2020).

On September 16, 2020, the Court granted Defendants' motion to dismiss, dismissing Plaintiff's claims against the Secretary of State of Illinois and the State of Illinois with prejudice (Doc. 38). The Court dismissed Plaintiff's other claims against the remaining three individual Defendants without prejudice, and allowed Plaintiff leave to file her first amended complaint. Plaintiff filed her amended complaint on November 5, 2020 (Doc. 43). Soon after, Defendants filed their motion and supporting memorandum to dismiss (Docs. 44, 45). Plaintiff filed a response to the motion to dismiss on January 8, 2021 (Doc., 47).

The amended complaint details that on or around March 8, 2017, a phone call was placed to the SOS that triggered an investigation into Plaintiff and her continued

employment (Doc. 43, pp. 2-3).[1] Plaintiff had been employed by the SOS since 2000 and, at this time, she was employed as a Public Service Supervisor for the Department of Driver Services (Doc. 43). On March 21, 2017, Defendant Randy Blue, employed by the Office of the Inspector General ("OIG"), and a non-party investigator, Megan Morgan, interviewed Plaintiff and Plaintiff provided a written statement to them that same day (*Id.* at pp. 2-3). On March 30, 2017, Plaintiff provided an additional written statement to the investigators (*Id.* at p. 3). On April 19, 2017, the SOS Inspector General forwarded a summary of his office's investigation into Plaintiff's conduct to Stephen Roth, the SOS Director for the Department of Personnel (*Id.*).

Over a year later, on May 11, 2018, Plaintiff received written notice that the SOS was suspending her, pending discharge. This letter contained a statement of charges (*Id.*). In response, Plaintiff submitted a rebuttal letter to the SOS on May 16, 2018 (*Id.*). On May 25, 2018, Plaintiff and her union representative participated in a "pre-discharge" hearing via telephone (*Id.*). On June 1, 2018, Plaintiff received written notice that the SOS was terminating her from her position, effective the same day, and notifying her that she could appeal to the Merit Commission (*Id.*).

Plaintiff was represented by an attorney during the Merit Commission hearing (*Id.* at p. 4). At some point before the hearing, Plaintiff and her attorney requested copies of the documents being used by the SOS at the hearing (*Id.* at p. 4; Doc. 45, p. 3). Plaintiff

---

[1] In considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts, and draws all possible inferences in the plaintiff's favor. *E.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation omitted).

received the documents "minutes before" the hearing began and upon a brief review, Plaintiff and counsel discovered several emails between Defendants Randy Blue, Michael Mayer (Director of Driver Services with the SOS), and other administration staff about Plaintiff (*Id.* at p. 4).

Plaintiff discovered that these emails included "biased and unprofessional behavior" that indicated coordinated efforts between the investigative and authoritative parties to terminate her (*Id.* at p. 4).[2]  For example, around November 15, 2017, Defendant Jay Morgan, regional manager, emailed an employee in driver services asking if there was "any word" on Plaintiff because he thought "she was leaving" (*Id.* at p. 6).[3]  On July 25, 2018, Megan Morgan (non-party who helped investigate Plaintiff) exchanged emails with Ellen Sfikas (assistant general counsel for the SOS) about Plaintiff, in which Ms. Sfikas stated, "She's a loony bird," in reference to Plaintiff (*Id.*).

On November 14, 2018, the SOS Merit Commission adopted the Hearing Officer's Proposal for Decision and terminated Plaintiff from her position with the SOS (Doc. 54, p. 5). Plaintiff argues she was never given a true opportunity to be heard during the investigation, pre-discharge telephone conference, or post-discharge Merit Commission Hearing (Doc. 43, p. 7).

---

[2]  Although Plaintiff cites to these emails in her amended complaint, they were not attached to the complaint and do not appear to be in the record.

[3]  This appears to be the only place Defendant Jay Morgan is mentioned in facts section of the complaint. *See* Doc. 43.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the plaintiff's favor. *E.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation omitted). The complaint will survive the motion to dismiss only if it alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff does not need "detailed factual allegations," but must plead more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Determining whether a complaint plausibly states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The structure outlined here for the complaint will ensure that the defendant receives "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 1959.

## Discussion

In their second motion to dismiss, Defendants argue that Plaintiff has not alleged facts to support her due process claim, as she has not alleged inadequate pre- and post-deprivation procedures (Doc. 45, p. 4). Defendants argue that since Plaintiff has not properly alleged her first due process claim, her other claims fail, as she has not properly alleged proof of a constitutional violation, which is required for her failure to intervene (Count II) and conspiracy (Count III) claims (*Id.* at p. 9). Finally, since Plaintiff has failed to properly plead that she has suffered a constitutional violation, Defendants argue the Court should decline to exercise supplemental jurisdiction over the state claims (Counts IV-V) (*Id.* at p. 10). Defendants are correct that Plaintiff's success at this stage hinges on her due process claim, so the Court will begin its analysis there.

I.    Plaintiff's due process claim under 42 U.S.C. §1983

Defendants argue in their second motion to dismiss, as they did in their first, that Plaintiff has not adequately alleged pre- or post-deprivation procedures and, therefore, cannot maintain her due process claim under §1983 (Doc. 19, pp. 6-8; Doc. 45, pp. 4-9). Plaintiff disagrees, asserting that she has sufficiently stated a due process violation under 42 U.S.C. §1983, as she has described biased pre- and post-deprivation procedures that amounted to "sham" opportunities, depriving Plaintiff of her due process rights throughout the employment termination process (Doc. 47)

Public employees have a property interest in continued employment and it is well-established that they may not be deprived of that interest without notice and an

opportunity to be heard. *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 538-41 (1985); *Carmody v. Bd. Of Trs. Of Univ. of Ill.*, 747 F.3d 470, 476 (7th Cir. 2014). In general, "the right to some kind of prior hearing is paramount." *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). Prior to termination, or "pre-deprivation," the public employee must be provided with notice of the proposed deprivation, a statement of reasons, and an opportunity to be heard in response. *Bradley v. Vill. Of Univ. Park*, 929 F.3d 875, 882 (7th Cir. 2019), citing *Bd. of Regents*, 408 U.S. 564 ; *Perry v. Sindermann*, 408 U.S. 593 (1972). State and local governments can add additional procedural protections, outlined by local ordinances or state statutes, but non-compliance with these additional protections does not automatically equate to a federal due process violation. *Bradley*, 929 F.3d at 883; *Schultz v. Baumgart*, 738 F.2d 231, 236 (7th Cir. 1984) (explaining that "it is not the task of this [federal] court to enforce in every procedural detail the elaborate requirements of [state law]").

The exact type of process due depends on the nature of the private interest at stake, the risk of decisional error, and the government's interest. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine what sort of process is due, the Seventh Circuit has explained, "'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010) (citing *Rivera–Powell v. New York City Bd. Of Elections*, 470 F.3d 458, 465 (2d Cir.2006) (internal citations omitted)).

In her amended complaint, Plaintiff does not describe issues with established state procedures; rather, the gravamen of her complaint is that certain individuals who investigated her throughout the discharge process, some of whom are named Defendants and some who are not, tainted the entire process through their own biases, violating her constitutional rights. Plaintiff explains, "[t]hat taint fundamentally affected the reports subsequently generated and the testimony subsequently offered so that the entirety of the proceedings that occurred relied upon the tainted investigation and reports" (Doc. 47, p. 6). Therefore, any pre-deprivation hearings were meaningless because the information presented was biased and skewed to make it easier to fire her. It follows, Plaintiff argues, that the post-deprivation procedures are also inherently inadequate because they depend on the original biased investigation (Doc. 47, pp. 6-7). Essentially, Plaintiff was only provided with "sham" opportunities to be heard that deviated from the appropriate procedures from start to finish in her termination, thereby violating Plaintiff's constitutional rights (*Id.* at p. 5).

Plaintiff describes that her rights were violated through random and unauthorized acts by state actors. *Leavell*, 600 F.3d at 804. Generally, when a state official deprives a person of her property through a random, unauthorized act[4] that departs from state law, the federal due-process guarantee requires *only* that the state provide an adequate post-

---

[4] The Seventh Circuit analyzed what constitutes a "random, unauthorized act" in employment cases such as the present matter. *See Vargas.,*952 F.3d at 875 (7th Cir. 2020). There, the Seventh Circuit outlined that biased Merit Board decisions constitute these sorts of "random, unauthorized" acts that depart "from state law." *Id.*

deprivation remedy. *Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013).[5] The Seventh Circuit has described various situations where state actors have departed from state law and yet, there is no federal violation because there are sufficient post-deprivation remedies. In other words, "random, unauthorized acts are, after all, inherently unpredictable, so a plaintiff can prevail on a due-process claim…only if state law fails to provide an adequate post deprivation remedy." *Vargas*, 952 F.3d at 871 (citing *Simmons*, 712 F.3d at 1044); *see also Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008). The Seventh Circuit has also held that the Illinois Administrative Review Act provides constitutionally adequate post-deprivation remedies for public employees to challenge these sorts of disciplinary decisions where public employees depart from state law. *Vargas*, 952 F.3d at 875 (citing *Cannici v. Village of Melrose Park*, 885 F.3d 476, 480 (7th Cir. 2018)). The Illinois Administrative Review Act establishes that aggrieved employees should seek state-court review of final administrative rulings. *See* 735 ILL. COMP. STAT. 5/3-101 *et seq*. Therefore, the question before the Court is whether Plaintiff has properly alleged in her amended complaint that the post-deprivation remedies are deficient and, therefore, she must seek redress through this Court as opposed to state

---

[5] While the Court's analysis focuses on post-deprivation remedies, the parties seem to agree that Plaintiff received notice and an opportunity to be heard prior to her termination (even though Plaintiff contends the process was tainted and biased). The parties agree that Plaintiff was provided with notice that the SOS was suspending her pending discharge on May 11, 2018 (Doc. 43, p. 3). This notice contained a statement of charges that provided the reasoning for her possible discharge (*Id.*). The parties agree Plaintiff had two hearings. The first, which occurred on or around May 25, 2018, was conducted via telephone conference and Plaintiff was joined by her union representative (*Id.*). The second was an appeal hearing in front of the Merit Commission, where she was represented by an attorney, to tell her side of the story (*Id.* at pp. 3-4).

court. *See Doherty v. Cty. of Chicago,* 75 F.3d 318, 323 (7th Cir. 1996) ("Where state law remedies [to random and unauthorized conduct] exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate.").

Here, Plaintiff does not directly address whether state-court review is an inappropriate or unavailable option for her to seek review of the Merit Commission's decision and her entire termination process; rather, she only includes one line stating that exhaustion is not a prerequisite to §1983 actions (Doc. 47, p. 6, citing *Patsy v. Bd of Regents of State of FL,* 457 U.S. 496 (1982)). Plaintiff's argument misses the mark, as precedent does not dictate a party must exhaust state remedies prior to filing a federal lawsuit; rather, precedent requires the plaintiff to demonstrate that the post-termination remedies as outlined by the Illinois Administrative Review Act fail to provide an adequate post-deprivation remedy in order to bring suit in federal court, which Plaintiff has failed to demonstrate.

In their motion to dismiss, Defendants argue a series of cases including one case, in particular, is analogous to the present matter—*Vargas v Cook Cnty Sheriff's Merit Bd.,* 952 F.3d 871 (7th Cir. 2020). In *Vargas,* the Seventh Circuit upheld a district judge's order dismissing that plaintiff's due process claim. The plaintiff was part of a group of employees who were discharged from their employment by a Merit Board whose membership violated state law. The Seventh Circuit held that even though the Merit Board's membership violated state law, this, and their decisions, did not automatically

trigger violations of federal due process; rather, these sorts of biased decisions are viewed as the random and unauthorized acts that depart from state law and federal due process only required that the state provide an adequate post-deprivation remedy. *Vargas*, 952 F.3d 871 at 875 (citing to *Simmons*, 712 F.3d at 1044) (affirming dismissal under 12(b)(6) for a case in which the plaintiff did not show how the state court's decision caused him injury, thereby showing how this post-deprivation remedy was insufficient; rather, the plaintiff only argued that the state court decision was not favorable enough to him); *Michalowicz*, 528 F.3d at 535 (affirming a 12(b)(6) dismissal of a former fire inspector's Section 1983 due process claim where the plaintiff alleged post-termination hearing officers were biased against him because the Illinois Administrative Review Act provided adequate remedies). The Seventh Circuit in *Vargas* once again recognized that the Illinois Administrative Review Act contains an adequate post-deprivation remedy for public employees to challenge these sorts of random and unauthorized departures from state law in disciplinary decisions. *See also Cannici,* 885 F.3d at 480 (collecting cases).

The Court does not see how the present case is any different from *Vargas* and the cases before it. Plaintiff has failed to cite to a single case in her brief to support her contention that this case is different than *Vargas.* Plaintiff contends that her situation is factually different from that of the *Vargas* plaintiff because the investigation leading up to her termination was biased rather than just experiencing a biased hearing. But even so, Plaintiff has still alleged that state actors deviated from state law, which requires the Court to analyze whether the post-deprivation remedy of seeking state-court

intervention, as outlined repeatedly by the Seventh Circuit, is constitutionally deficient. Defendants highlight that Plaintiff has not asserted facts to demonstrate she availed herself of the immediate post-deprivation procedure, which is to seek state judicial review pursuant to the Illinois Administrative Review Law 735 ILCS 5/3-101 *et seq.* (Doc. 19, p. 7).

Additionally, the parties agree that Plaintiff received notice and an opportunity to be heard prior to her termination, even though they disagree as to whether this opportunity was meaningful. Even so, this key agreement differentiates Plaintiff's case from those where dismissal was not appropriate because there was no notice and no opportunity to be heard. *See* B*radley*, 929 F.3d 875 (reversing dismissal of a former police chief's Section 1983 due process claim in which plaintiff alleged termination of his employment *without notice and a hearing*). As such, Plaintiff has not demonstrated how the pre- and post-deprivation remedies are deficient in order for this Court to properly hear her case and, therefore, dismissal is proper at this time.

II.   Plaintiff's Other Claims

In addition to her due process claim, Plaintiff also asserts failure to intervene (Count II) and conspiracy (Count III) claims under 42 U.S.C. §1983, as well as two state claims (Counts IV and V). To plead a failure to intervene claim, a plaintiff must demonstrate that the defendants (1) knew that a constitutional violation was committed, and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). To prevail on a conspiracy claim, "the plaintiff must show that (1) the

individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Daugherty v. Page,* 906 F.3d 606, 612 (7th Cir. 2018) (citing *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). Put differently, the plaintiff must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018).   The Court has concluded that Plaintiff failed to state a due process claim; therefore, she has failed to demonstrate an underlying constitutional violation to maintain these two claims. These claims will also be dismissed with prejudice.

Plaintiff's last two claims are state-law based claims. When the claims supporting federal jurisdiction drop out of the case, the usual practice is to relinquish jurisdiction over any remaining state-law claims. *Vargas,* 952 F.3d at 876, citing *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480–81 (7th Cir. 2012). As such, the Court will dismiss these claims without prejudice. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## <u>CONCLUSION</u>

Defendants' motion to dismiss is **GRANTED**. Plaintiff's Count I (due process), Count II (failure to intervene), and Count III (conspiracy) are **DISMISSED with prejudice**. Plaintiff's Count IV (intentional infliction of emotional distress) and Count V

(civil conspiracy), also referred to as Plaintiff's state-law claims, are **DISMISSED without prejudice.** The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close this matter on the Court's docket.

**IT IS SO ORDERED.**

**DATED: May 18, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**